IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

GSC CAPITAL HOLDINGS, LLC,

Plaintiff,

v.

BROADSTREET GLOBAL FUND, LLC, and BROADSTREET GLOBAL MANAGEMENT, LLC,

Defendants.
_______________________________________/

CASE NO. _______________

# COMPLAINT

Plaintiff GSC Capital Holdings, LLC ("GSC"), for its Complaint against Defendants Broadstreet Global Fund, LLC ("Broadstreet Fund") and Broadstreet Global Management, LLC ("Broadstreet Management"), alleges as follows:

## Preliminary Statement

1. This action arises out of Defendants' wrongful refusal to provide a cash redemption to GSC of its $46 million membership interest in the Broadstreet Fund, in violation of the express terms of the parties' agreements.

2. In 2023 and 2024, Defendants induced GSC to invest more than $60 million in the Broadstreet Fund by agreeing to provide GSC with, among other things, the right to obtain a cash redemption of its interest upon written notice. The parties entered into two separate side letter agreements memorializing GSC's right to a cash redemption, and the governing document of the sub-fund in which GSC invested -- the Infrastructure Fund -- memorializes GSC's right to a cash redemption as well. Pursuant to the Broadstreet Fund's Operating Agreement, that specific governing document, known as a "Series Schedule," expressly supersedes any

conflicting provisions in the Operating Agreement, including the general discretion provided to Broadstreet Management to refuse a case redemption.

3. In October 2025, GSC made a written request to redeem its entire investment in cash. In response, the Broadstreet Fund's David Feingold agreed, writing:

> Gentlemen, I have received your communication. Please send me your wire instructions or confirm that you want your money returned to the same account in which you have been previously receiving payments. I look forward to a smooth end to your relationship with Broadstreet and wish you success in the future. Thank you.

But despite promising to redeem the entire amount of GSC's investment in cash, the Broadstreet Fund redeemed just $18 million. Defendants have refused to provide GSC with a cash redemption of the approximately $46 million in cash that remains, and instead have informed GSC -- and all of the Broadstreet Fund's other investors -- that their interests will only be redeemed "in kind," in the form of stock in a newly-formed special purchase acquisition vehicle.

4. In the meantime, Defendants have been sued by the United States Securities and Exchange Commission (the "SEC") for fraud. The SEC alleges that Defendants and their affiliates orchestrated a $1 billion fraudulent scheme involving inflated investment returns and the diversion of tens of millions of dollars in investor assets. To that end, Defendants recently informed GSC and Broadstreet's other investors that Defendants soon will be transferring approximately $3.6 billion in assets out of the Broadstreet Fund's Infrastructure Fund. If that transfer occurs, GSC and the Broadstreet Fund's other investors may be left without a remedy for Defendants' wrongful refusal to redeem their investments in cash.

5. Thus, by this action, GSC seeks (i) to recover the damages caused by Defendants' breach of their obligation to redeem GSC's investment in cash; (ii) a judgment declaring that

GSC is entitled to -- and that Defendants must provide GSC with -- an immediate cash redemption of GSC's interest in the Broadstreet Fund, and that Defendants attempt to force GSC to accept a redemption of its interest in the Broadstreet Fund "in kind" breaches the operative agreements between the parties; and (iii) an injunction precluding Defendants from transferring assets out of the Broadstreet Fund.

**Parties, Jurisdiction and Venue**

6. Plaintiff GSC is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located in Boca Raton, Florida.

7. Defendant Broadstreet Fund is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in South Carolina.

8. Defendant Broadstreet Management is a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business located in South Carolina. Broadstreet Management is the Manager of Broadstreet Fund.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States; and pursuant to 28 U.S.C. § 2201, *et seq.*, as GSC asserts a claim for, among other things, declaratory judgment.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to GSC's claims occurred, in this judicial District. Moreover, on June 6, 2026, Defendants waived any objection to venue by filing a lawsuit in this Court, Case No. 26-CV-23998-DPG, against five investors in the Broadstreet Fund, seeking a judgment declaring that Broadstreet Management has the right to redeem Broadstreet Fund investors "in kind" under the Operating Agreement (the "Related Case").

## **Factual Allegations**

### A. **The Broadstreet Fund**

11. The Broadstreet Fund is an investment fund formed on or about September 14, 2020. The terms governing each investor's interests in the fund are set forth in a Private Placement Memorandum (the "Offering Memorandum"), an Amended and Restated Limited Liability Company Agreement of Broadstreet Global Fund, LLC (the "Operating Agreement"), and a Subscription Agreement (the "Subscription Agreement").

12. The Offering Memorandum provides that the fund is divided into separate series of investments with "its own investment strategy and objective," and states that each series is supposed to be "a separate pool of assets" that are supposed to be "operated in a manner so as to avoid cross-liability between the Series". To that end, the Offering Memorandum provides:

> A supplement to the Memorandum (each, a "Supplement") in respect of each Series will be created and distributed to prospective investors in such Series. Each Supplement will set forth the investment objective, investment strategy and terms related to the applicable Series. *To the extent there is any conflict between the terms of a Supplement in respect of a Series and the terms of this Memorandum, the Supplement shall control with respect to such Series*.

(Emphasis added.)

13. The Operating Agreement provides that the Infrastructure Series Schedules constitute part of the Operating Agreement. Thus, the definition of the term "Agreement" -- *i.e.*, the Operating Agreement -- includes "any and all current and future Series Schedules hereto". And Section 5.01(a) of the Operating Agreement provides that the Series Schedule "shall be treated as part of this Agreement".

14. The Operating Agreement makes clear that where the provisions of the Infrastructure Series Schedule conflict with the Operating Agreement, the provisions of the

Infrastructure Series Schedule supersede the inconsistent portions of the Operating Agreement. Thus, the definition of the term "Series Schedules" provides, in relevant part:

> A Series Schedule may amend, supplement and/or supersede any provision of this Agreement (including provisions relating to contributions, withdrawals, Management Fees, the Incentive Allocation and distributions). *To the extent that any term of a Series Schedule conflicts with this Agreement, the Series Schedule shall govern*, solely with respect to the applicable Series or Class.

(Emphasis added.) Similarly, Section 5.01(b) of the Operating agreement provides: The terms of any Series established by the Manager shall be as set forth in the Series Schedule relating thereto, and *to the extent not inconsistent therewith*, as otherwise set forth herein. (Emphasis added.)

15. The Operating Agreement purports to provide Broadstreet Management with the right to "suspend or restrict the right of any Member to withdraw capital or receive a distribution of the amount being withdrawn from the Company or any Series" if Broadstreet Management believes such suspension or restriction would be in the best interests of the Company or such Series.

16. That general provision, however, conflicts with the Infrastructure Series Schedule to the Operating Agreement (the "Infrastructure Series Schedule"), which specifically provides "investor funds and pro-rata distributions returned within 180 days of notice of redemption provided in writing to Manager." The Infrastructure Series also provides that "Other Unique Series Terms" include "Side Letter agreements for substantial investments by qualified individuals and institutions".

**B. <u>GSC's Investment in the Broadstreet Fund.</u>**

17. On June 9, 2023, the Broadstreet Fund and one of GSC's minority members, Jeffrey Davis, entered into an agreement pursuant to which the Broadstreet Fund agreed, among

other things, to provide a special purpose entity to be formed by Mr. Davis -- *i.e.*, GSC -- with a 15.6% annual return on its investment in the fund (reflecting a 1% premium over other investors) and the right to redeem its investment "in cash within six months" of a redemption request (the "June 2023 Side Letter Agreement"). The June 2023 Side Letter Agreement was contingent upon the investment of at least $20 million in the 12-month period following execution of the agreement.

18. Thereafter, GSC invested a total of $64,035,000 in the Broadstreet Fund. Specifically, in 2023, GSC invested $13,450,000 in the fund, which was allocated to the fund's "Infrastructure" series (the "Infrastructure Fund"). On February 29, 2024, GSC invested $75,000 in the Infrastructure Fund, and on March 1, 2024, GSC invested $300,000 in the Infrastructure Fund. Moreover, on April 15, 2024, GSC invested $210,000 in the Crypto/Altcoin Mining sub-fund.

19. Although GSC did not invest at least $20 million within the 12-month period following execution of the June 2023 Side Letter, the Broadstreet Fund regularly paid GSC the agreed upon 15.6% annual return, and never objected or asserted that the June 2023 Side Letter was not effective and enforceable.

20. On September 11, 2024, $10 million of GSC's initial investment was transferred to the Broadstreet Fund's "Merchant Cash Advance" sub-fund (the "MCA Fund").

21. In September 2024, the parties agreed that GSC would invest an additional $50 million in the Broadstreet Fund. The fund induced GSC to make that additional investment by, among other things, reiterating its prior agreement in the June 2023 Side Letter Agreement that GSC would be able to redeem its entire investment in cash at any time, and further promising that GSC would be able receive any cash redemption in just 15 days. Thus, on September 20,

2024, the parties entered into a side letter agreement memorializing that promise (the "September 2024 Side Letter Agreement"; collectively with the June 2023 Side Letter Agreement, the "Side Letter Agreements").

22. On September 13, 2024, GSC invested an additional $15 million in the Broadstreet Fund, pursuant to the agreement that was memorialized a week later in the September 2024 Letter Agreement, which investment was allocated to the MCA Fund. And on October 1, 2024, GSC invested an additional $35 million in the Broadstreet Fund pursuant to the September 2024 Letter Agreement, which also was allocated to the MCA Fund.

23. As a further inducement to GSC's additional investment, the Broadstreet Fund promised to collateralize its obligations to GSC by granting GSC a security interest in the distributions payable to Broadstreet, Inc. by certain Special Purpose Vehicles that own the property underlying the Infrastructure Fund. To that end, the Broadstreet Fund circulated a Security Agreement memorializing its promise and the parties' agreement. However, the Broadstreet Fund never executed the Security Agreement.

### C. **The SEC Lawsuit.**

24. On January 29, 2025, the SEC filed a lawsuit against Defendants and certain of their principals and affiliates, styled *Securities and Exchange* Commission *v. David J. Feingold et al.*, Case No. 1:25-cv-20436-DPG, which is pending before Judge Darrin P. Gayles in the United States District Court for the Southern District of Florida (the "SEC Action"). In the SEC Action, the SEC alleges, among other things, that defendants in the SEC Action orchestrated a $1 billion fraudulent scheme involving inflated investment returns and the diversion of tens of millions of dollars in investor assets.

25. On April 1, 2025 a Monitor was appointed by the Court (the "SEC Monitor") in the SEC Action. A month later, the Broadstreet Fund transferred the entirety of GSC's investment from the MCA Fund to the Infrastructure Fund at the request of the SEC and/or the SEC Monitor.

26. In October 2025, the Broadstreet Fund issued notices to investors providing them with the option to redeem their investments in the Fund either in cash -- consistent with the Side Letters and the Infrastructure Series Schedule -- or "in kind" in the form of restricted securities listed on the New York Stock Exchange (the "October 2025 Redemption Notice"). The Fund withdrew the October 2025 Redemption Notice at the request of the SEC Monitor, and reissued a similar notice in November 2025, which GSC never received.

27. On or about October 27, 2025, GSC responded to the October 2025 Redemption Notice by providing the Broadstreet Fund with oral and written notice that it wished to redeem its entire investment in cash. On November 1, 2025, the Broadstreet Fund responded to the October 2025 Redemption Notice by unequivocally confirming, in writing, that GSC's investment would be redeemed in full, in cash, with no exceptions or preconditions.

28. Notwithstanding the Broadstreet Fund's acceptance of GSC's cash redemption and the clear and unambiguous terms of the Side Letters and the Infrastructure Series Schedule, the Broadstreet Fund has not redeemed GSC's investment in cash. Instead, on November 7, 2025, the Broadstreet Fund redeemed just $15 million of the investment, and in December 2025, the fund redeemed an additional $3 million, leaving GSC with approximately $46 million in the fund. Contemporaneously with the additional $3 million redemption, the Broadstreet Fund again promised to redeem GSC's entire investment, but failed to do so.

29. On May 22, 2026, the Broadstreet Fund sent a letter (the "May 22 Letter") to GSC -- and other investors -- advising that the fund intends to redeem remaining investments "in kind," in the form of stock in a Cayman Island company called Soulpower Acquisition Group (the "SPAC"), rather than in cash, in direct violation of, among other things, the Side Letters and the Infrastructure Series Schedule.

30. In the May 22 Letter, the Fund attempts to justify this blatant violation of its obligations to GSC -- and the Broadstreet Fund's other investors -- by claiming that Section 6.07(b) of the Operating Agreement permits it to suspend distributions of cash to redeeming members. However, Section 6.07 of the Operating Agreement cannot -- and does not -- justify the Broadstreet Fund's refusal to honor GSC's redemption in cash because, among other things, Section 6.07(b) expressly conflicts with the Infrastructure Series Schedule, which requires redemption in cash within 180 days if requested by a member.

31. On June 6, 2026, Broadstreet Management filed the Related Case against five investors in the Broadstreet Fund, seeking a judgment declaring that Broadstreet Management has the right to redeem Broadstreet Fund investors "in kind" under the Operating Agreement.

32. On July 27, 2026, Broadstreet Fund sent a letter to investors advising that it is in the process of consummating a transfer of the Infrastructure Fund's $3.6 billion in assets to the SPAC (the "Asset Transfer").

33. On August 6, 2026, the SEC filed in the SEC Action a motion to appoint a Receiver for the Defendants.

## **<u>Causes of Action</u>**

### **Count I**
### **(Breach of Contract -- Operating Agreement -- Against All Defendants)**

34. GSC realleges paragraphs 1 through 33 as if fully set forth herein.

35. The Operating Agreement, including the Infrastructure Series Schedules, constitutes a legally binding and enforceable contract between GSC and Defendants.

36. Defendants breached their material obligations under the Operating Agreement as a result of, among other things, failing to redeem GSC's investment in cash within 180 days of GSC's written redemption request, as required by the Infrastructure Series Schedule.

37. All of GSC's material obligations under the Operating Agreement have been performed or waived.

38. As a direct and proximate result of Defendants' material breach of the Operating Agreement, GSC has suffered damages in an amount to be determined at trial.

39. Moreover, Defendants' material breach of the Operating Agreement will result in irreparable harm to GSC that cannot be fully remedied by monetary damages in the event the Asset Transfer is consummated. In that regard, GSC has no available remedy at law.

WHEREFORE, GSC demands judgment against Defendants awarding GSC damages in an amount to be determined at trial, pre-judgment interest, and costs and fees, including the reasonable attorneys' fees incurred by GSC in prosecuting this action; entering an injunction precluding Defendants from consummating the Asset Sale or any other transfer of the Infrastructure Fund's assets; and granting such further relief as the Court deems just and proper.

**Count II**
**(Breach of Contract -- June 2023 Side Letter Agreement -- Against the Broadstreet Fund)**

40. GSC realleges paragraphs 1 through 33 as if fully set forth herein.

41. The June 2023 Side Letter Agreement constitutes a legally binding and enforceable contract between GSC and the Broadstreet Fund.

42. The Broadstreet Fund breached irs material obligations under the June 2023 Side Letter Agreement as a result of, among other things, failing to redeem GSC's investment in cash within six months of GSC's written redemption request.

43. All of GSC's material obligations under the June 2023 Side Letter Agreement have been performed or waived.

44. As a direct and proximate result of the Broadstreet Fund's material breach of the June 2023 Side Letter Agreement, GSC has suffered damages in an amount to be determined at trial.

45. Moreover, the Broadstreet Fund's material breach of the June 2023 Side Letter Agreement will result in irreparable harm to GSC that cannot be fully remedied by monetary damages in the event the Asset Transfer is consummated. In that regard, GSC has no available remedy at law.

WHEREFORE, GSC demands judgment against the Broadstreet Fund awarding GSC damages in an amount to be determined at trial, pre-judgment interest, and costs and fees, including the reasonable attorneys' fees incurred by GSC in prosecuting this action; entering an injunction precluding the Broadstreet Fund from consummating the Asset Sale or any other transfer of the Infrastructure Fund's assets; and granting such further relief as the Court deems just and proper.

**Count III**
**(Breach of Contract -- September 2024 Side Letter Agreement --**
**Against the Broadstreet Fund)**

46. GSC realleges paragraphs 1 through 33 as if fully set forth herein.

47. The September 2024 Side Letter Agreement constitutes a legally binding and enforceable contract between GSC and the Broadstreet Fund.

48. The Broadstreet Fund breached its material obligations under the September 2024 Side Letter Agreement as a result of, among other things, failing to redeem GSC's investment in cash within 15 days of GSC's written redemption request.

49. All of GSC's material obligations under the September 2024 Side Letter Agreement have been performed or waived.

50. As a direct and proximate result of the Broadstreet Fund's material breach of the September 2024 Side Letter Agreement, GSC has suffered damages in an amount to be determined at trial.

51. Moreover, the Broadstreet Fund's material breach of the September 2024 Side Letter Agreement will result in irreparable harm to GSC that cannot be fully remedied by monetary damages in the event the Asset Transfer is consummated. In that regard, GSC has no available remedy at law.

WHEREFORE, GSC demands judgment against the Broadstreet Fund awarding GSC damages in an amount to be determined at trial, pre-judgment interest, and costs and fees, including the reasonable attorneys' fees incurred by GSC in prosecuting this action; entering an injunction precluding Defendants from consummating the Asset Sale or any other transfer of the Infrastructure Fund's assets; and granting such further relief as the Court deems just and proper.

**Count IV**
**(Declaratory Judgment -- Against All Defendants)**

52. GSC realleges paragraphs 1 through 33 as if fully set forth herein.

53. This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 *et seq*.

54. Pursuant to 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Moreover, "[a]ny

such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

55. This action seeks a declaration that GSC is entitled to -- and that Defendants must provide GSC with -- an immediate cash redemption of GSC's interest in the Broadstreet Fund; and that Defendants' attempt to force GSC to accept a redemption of its interest in the Broadstreet Fund "in kind" breaches the operative agreements between the parties.

56. GSC believes that the specific language of the Infrastructure Series Schedule, the Side Letters and the Offering Memorandum require Defendants to redeem GSC's interests in cash, and control over any inconsistent general language in the Operating Agreement or Offering Memorandum.

57. Defendants generally contend, but GSC denies, that the Operating Agreement permits Defendants to refuse to redeem GSC's interest in the Broadstreet Fund in cash.

58. As a result of these disparate contentions, GSC's approximately $46 million remaining investment in the Broadstreet Fund is in jeopardy.

59. There is a bona fide, actual, and practical need for a declaration from the Court as to the parties' rights under the Operating Agreement, Side Letters and other governing documents. GSC is entitled to a declaration that GSC is entitled to -- and that Defendants must provide GSC with -- an immediate cash redemption of GSC's interest in the Broadstreet Fund; and that Defendants' attempt to force GSC to accept a redemption of its interest in the Broadstreet Fund "in kind" breaches the operative agreements between the parties

60. The declarations sought herein are not intended to be legal advice, but rather to obtain a declaration of GSC's rights and the rights of the parties to this action.

WHEREFORE, GSC demands judgment against Defendants declaring that GSC is entitled to -- and that Defendants must provide GSC with -- an immediate cash redemption of GSC's interest in the Broadstreet Fund; declaring that Defendants attempt to force GSC to accept a redemption of its interest in the Broadstreet Fund "in kind" breaches the operative agreements between the parties; and granting such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

GSC demands a trial by jury on all issues so triable.

Dated: August 19, 2026

MINSKER LAW PLLC

*/s/ Jonathan E. Minsker*
Jonathan E. Minsker
Florida Bar No. 38120
jminsker@minskerlaw.com
1100 Biscayne Blvd, Suite 3701
Miami, Florida 33132
Telephone: (786) 988-1020
Facsimile: (305) 377-1664

*Counsel for GSC Capital Holdings, LLC*

-and-

Melanie E. Damian
Florida Bar No. 99392
mdaminan@dvllp.com
Kristopher E. Pearson
Florida Bar No. 16874
kpearson@dvcattorneys.com
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960

*Counsel for GSC Capital Holdings, LLC*